# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SAMANTHA MIATA, BRIAN
ABERMAN, JACK ABERMAN and GEA
SEASIDE INVESTMENT, INC.,**

          **Plaintiffs,**

**v.**                                              **Case No:  6:14-cv-1428-Orl-31KRS**

**CITY OF DAYTONA BEACH,**

          **Defendant.**

_____

## ORDER

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. 7),[1] Defendant's Motion to Dismiss the Complaint (Doc. 13), and Plaintiff's Response in Opposition to the Motion to Dismiss (Doc. 21).

### I.    Background

This case arises out of an ordinance passed by the City of Daytona Beach ("Daytona Beach") which mandated building code inspections of rental properties prior to issuance or renewal of residential rental licenses. The Plaintiffs are individual renters, an individual owner, and a corporate owner of rental property subject to the inspection requirement. While code inspection ordinances for rental units are not uncommon, what makes this situation unique is that Daytona Beach has employed its police force, rather than civil code enforcement officers, to undertake the inspections.

---

[1] While Defendant did not directly respond to the Motion for Preliminary Injunction, the Motion to Dismiss noted that Defendant has amended the challenged ordinance. Based on this development, additional briefing is called for and this Order will reserve ruling on the Motion for Preliminary Injunction and set out a briefing schedule.

(Doc. 1 ¶ 25). According to the Complaint, Daytona Beach Police Officers have sent threatening letters to tenants and landlords pursuant to the ordinance. Further, police officers have "closely inspect[ed] the exterior of Plaintiffs' homes by entering onto Plaintiffs' properties without consent and without a warrant. The tenant-Plaintiffs have been made to feel threatened by Defendant's Police Department for refusing to allow an interior inspection of their homes." (Id. ¶ 28).

Daytona Beach asserts that Plaintiffs lack standing to bring this challenge, and moreover, that even if they have standing, they have failed to state a claim and the case should be dismissed pursuant to Rule 12(b)(6).

## II.    Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto.   Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).   The Court will liberally construe the complaint's allegations in the Plaintiff's favor.   *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).   However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."   *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)).   This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action.   *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).

However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

### III.   Analysis

#### A.  Daytona Beach Ordinance

The ordinance challenged by Plaintiffs is 12-186, codified in Article VI of the Daytona Beach Code of Ordinances regulating rental of residential dwellings. The provisions being challenged state, in pertinent part:

> **Sec. 26-293. - Applicability.**
> The requirements of this article shall apply to all residential rental properties with one to four units located within the city, and the owners of all such units and properties and their agents.[2]

---

> **Sec. 26-294. - License required.**
> (a)    It shall be unlawful to rent or lease, or offer to rent or lease, any residential rental unit without a current residential rental license for the unit, a copy of which shall be posted or available at the residential rental property.
>
> (b)    No license shall be issued or renewed for a residential rental unit unless the residential rental property and unit are in compliance with the requirements of this article and applicable provisions of the Land Development Code, and International Property Maintenance Code as adopted in Article 19, LDC.

---

> **Sec. 26-295. - License application; registration statement.**
> (a)    Application for a residential rental license for each residential rental unit shall be made in writing on forms supplied by the city.
>
> (b)    The application shall include a registration statement providing the following information:

---

[2] State regulations govern multi-unit rental dwellings of five or more units.

[subsections 1-5 require identifying information for the property, owner, repairperson, and agent]

(6)    Name, address, and phone number of a natural person 18 years of age or older who can be contacted 24 hours a day, seven days a week, regarding the residential rental unit. This contact person may be the owner, the owner's agent, or any other person other than a resident of the rental unit who has agreed to be the contact person.

(c)    After submission of the application and registration statement, the residential rental property owner or designated agent shall have a continuing obligation to notify the city in writing within 15 calendar days of any change in the information provided in the registration statement. Failure to notify the city of changes shall be a violation of this article.

**Sec. 26-296. - Inspection; issuance of license and renewal.**

(a)    Within 15 working days after receipt of a complete application satisfying the requirements above and the application fee, the city shall inspect the residential rental property and units to determine compliance with all applicable provisions of the Land Development Code, including the property maintenance code, and shall issue the license or provide the applicant with written notice of any defects which must be remedied before a license shall issue.

(b)    The license shall be renewed each year in the same manner as, and concurrent with, the business tax receipt renewal as provided in Chapter 90, Article V, of this Code.

(c)    Each residential rental property and unit regulated by this article shall be reinspected every 24 months, contingent upon department resources and the number of units to be inspected. The city shall maintain a reinspection schedule for currently licensed units. In addition, any currently licensed unit or property may be inspected upon reasonable notice. The property owner and agent shall permit the city to inspect all premises governed by this article to determine compliance, and shall fully cooperate with such inspections. The property owners or their agents shall notify tenants of planned inspections of their residential rental units and shall make every effort to obtain the tenant's written consent to entry for inspection purposes.

(d)    A tenant may request an inspection of the residential rental property or unit in which he or she currently resides if violations of the International Property Maintenance Code are suspected.

Daytona Beach Code of Ordinances, Art. VI, §§ 26-294 – 26-296 (2012) (hereinafter the "Ordinance").

### B.  Motion to Dismiss

#### i.    Standing

Daytona Beach challenges standing as to all of the Plaintiffs, arguing they have failed to allege an actual or imminent injury. Here, the Complaint asserts that Daytona Beach police officers have conducted close inspections of the exterior of dwellings pursuant to the Ordinance. While the Defendant argues that does not constitute a search, long established case law holds otherwise. *See Oliver v. United States*, 466 U.S. 170, 180 (1984) (noting that Fourth Amendment protections extend to curtilage of home but not open fields). While it is not clear that the inspection fell within the curtilage of the residences, it can be read as such. Further, the facts of this case are strikingly similar to *Columbia Basin Apartment Association v. City of Pasco*, 268 F.3d 791 (9th Cir. 2001). In *Columbia Basin*, tenants, landlords, and an apartment association that consisted of owners and managers of apartments sued the city for alleged constitutional violations based on an ordinance that required residential inspections for issuance of a city residential rental license. The Ninth Circuit addressed the issue of standing as to both the tenants and landlords. As for the tenants, it was their residences that were being searched and they faced eviction if the rental licenses were revoked— accordingly, they had an imminent injury. *Id.* at 797. The landlords had standing as the ordinance arguably compelled them to either violate the Fourth Amendment rights of their tenants or lose their business license. The court stated:

> If the Pasco Ordinance requires the landlords to invade the Fourth Amendment rights of their tenants in order to obtain their business licenses, this is no less of an injury than requiring a person to discriminate on the basis of race or gender in order to obtain a governmental benefit. Thus, the City's enforcement of the Pasco Ordinance may impermissibly threaten the landlords with a deprivation of property and civil penalties if they are unwilling to violate the Fourth Amendment rights of their tenants.

*Id.* at 798 (citations omitted).[3] Here, like in *Columbia Basin*, both tenants and owners of the rental properties have sustained concrete and particularized, actual or imminent injury, which is traceable to the Defendant's challenged actions and accordingly they have standing.

### ii.   Constitutional Challenges to Inspection Ordinance

### a.   Facial Challenges

The Plaintiffs assert that the ordinance, on its face, violates three clauses in the Constitution: the Fourth Amendment's prohibition on unreasonable search, the Fourteenth Amendment's guarantee of equal protection, and the Fourteenth Amendment's due process guarantee which prohibits overly vague laws. Facial challenges are only successful when there is no way a law could be administered within the bounds of the Constitution.

> A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the [challenged act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid . . . .

*United States v. Salerno*, 481 U.S. 739, 745 (1987). Accordingly, to be successful on either Counts I, III, and IV, there must be no construction of the challenged ordinance that could result in a constitutional application.

---

[3] The court in *Columbia Basin* ultimately ruled that the district court was required to abstain from ruling under the *Younger* and *Pullman* abstention doctrines. As there is no pending state litigation, that analysis is inapplicable here.

### 1. Warrantless Searches

Count I, asserts that the ordinance authorizes warrantless administrative searches in violation of the Fourth Amendment and *Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523 (1967) along with its progeny. The plain text of the ordinance does no such thing, and while it could be read to authorize warrantless searches, it can be read without such authorization as well. Section 26-296 of the Daytona Beach Code states that the inspections *shall* occur, but does not state that they shall occur regardless of permission or warrant. Further, as Defendant suggests, the case should be read in concert with Florida Statutes Section 933.21 which provides for warrants for administrative searches, implying that warrantless searches are not authorized. While the Ordinance is subject to Plaintiffs' proposed reading, alternative constructions are possible which make it permissible in its application.

### 2. Vague Guidelines for Suspension or Revocation Hearings

Count III asserts a facial challenge arguing that the Ordinance is void for vagueness based on the suspension or revocation guidelines set out for the hearing administrator. The Complaint asserts that the portions of the Ordinance regarding suspension or revocation hearings "encourages arbitrary and discriminatory enforcement of the Ordinance's provisions." (Doc. 1 ¶ 42). The Supreme Court recognized arbitrary enforcement as a due process concern:

> [I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (footnote omitted). However, impermissible vagueness is not a mechanical or bright line standard.

> The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the

enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action.

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (footnote omitted). When the challenged ordinance creates a civil penalty, rather than criminal, the "consequences of imprecision are qualitatively less severe." *Id.* Further, with pre-enforcement challenges, such as this, "the speculative danger of arbitrary enforcement does not render the ordinance void for vagueness." *Id.* at 503.

Here, the revocation and suspension hearings are governed by not only the Ordinance itself, but other provisions in city's land development code, incorporated Florida statutory provisions, and the right to appeal of the decision. Further, the Plaintiff's Response appears to largely abandon this line of argument, citing no authority in opposition. (Doc. 21 at 4-5). With the guidance on hearings that the Ordinance includes and incorporates through other parts of the Daytona Beaches' Land Development Code, Florida Statues, and the right to appeal to an appropriate court, the Ordinance does not necessarily encourage arbitrary and discriminatory application.

### 3.   Unequal Treatment of Renters and Owners

Finally, Plaintiffs challenge the ordinance based on equal protection grounds, asserting that it unfairly differentiates between renters of real property and owners. Here, where no protected classes or fundamental interests are invoked, lawmakers "are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. State of Md.*, 366 U.S. 420, 425-26 (1961). Further, the government need not prove the rationality of its action, rather the challenger must show that no reasonable set of facts could prove such a rational basis for the disparate treatment. *See Bd. of Trustees of Univ. of Alabama v. Garrett,*

531 U.S. 356, 367 (2001). As Defendant points out, ordinances that treat residential rental properties as separate from owner occupied residences are ubiquitous in states and municipalities and they have been upheld for many years now. Further, common sense dictates that rental units may not receive the same attention and upkeep as owner occupied properties—thus, more oversight for rental units makes sense. Accordingly, the unequal treatment overcomes the low bar of rational relation.[4]

### b.  Fourth Amendment As Applied Challenge—Warrantless Search

While the facial challenges have failed to state a claim, the Complaint read in the light most favorable to Plaintiffs asserts that police officers have conducted warrantless searches of the curtilage of the subject properties. As applied challenges to search ordinances look not to how a law may be interpreted, but instead to how a government has administered the law. As both Plaintiff and Defendant acknowledge, the Supreme Court set out the applicable rule in *Camara*, 387 U.S. 523. The Court in *Camara*, held, at base, that the Fourth Amendment applied to home inspections when a city sought to ensure compliance with building codes—accordingly, either permission or a warrant was required for entry. *Id.* at 534. While the Court relaxed the warrant's particularity requirement, *id.* at 534-38, if there is to be a search without permission, a municipality must still secure a warrant to conduct a search.

Defendant characterizes the exterior searches as simply inspection of the portions of the property exposed to view—an area where there is no reasonable expectation of privacy. However, the Plaintiffs' allegations suggest otherwise. The Complaint implies that the searches may have

---

[4] Courts construe a facial constitutional challenges to be an as applied challenge, if possible. *See Am. Fed'n of State, Cnty. & Mun. Employees Council 79 v. Scott*, 717 F.3d 851, 864 (11th Cir. 2013) *cert. denied*, 134 S. Ct. 1877 (2014). Here, Counts I asserts a separate as applied challenge under the Fourth Amendment, which is Count II, so no construal is required. As for Counts III and IV, an as applied challenge is not easily construed from the pleadings, however, as this dismissal will not attach prejudice, those claims could be repleaded as either facial challenges or as applied challenges if the Plaintiffs move to do so.

occurred within the curtilage of the houses—the assertion that residents were "startled" by the police seems to support this view. (*See* Doc. 1 ¶ 28). The Supreme Court has recognized a privacy interest in such area of a residence. *See Oliver,* 466 U.S. at 180; *see also United States v. Fuller*, 572 F. App'x 819, 820 (11th Cir. 2014) ("The Fourth Amendment protects persons and their houses, papers, and effects from unreasonable searches and seizures. This protection extends to the curtilage of a person's home, which is part of the home itself for Fourth Amendment purposes." (quotes and citations omitted)). Construed most favorably for the Plaintiffs, the Complaint asserts police conducted searches of the curtilage of the properties pursuant to the Ordinance, and accordingly, asserts enough for an as applied challenge. Furthermore, building and zoning code inspections are usually conducted by governmental inspectors—not police officers. Since Daytona Beach has charged its police force with the searches, rather than a municipal officer, the Fourth Amendment interests may play a greater role than an instance simply involving a municipal employee. Here the administrative inspections would give the Daytona Beach police force an avenue into private residences they otherwise would not have had. This may raise Fourth Amendment concerns beyond that of a simple inspection by a municipal agent.

### C.  Amendment of the Ordinance and the Motion for Preliminary Injunction

While the Complaint sets forth a sufficient as applied challenge to the Ordinance, the Defendant notes a pending amendment to the code that has been approved on first reading and was scheduled for final approval on October 15, 2014. The amendment specifically calls for permission or a warrant to search a property. (*See* Doc. 13 at 3 n.2; Doc. 13-1). A review of municode.com appears to support the view that the Ordinance has been amended, but not yet codified. Accordingly, the legal framework from which the Plaintiff sought injunctive relief has changed, which alters the analysis for a preliminary injunction. Based on this change, the parties may file supplemental

memoranda, as specified below, on the current state of the Ordinance and how that impacts the Motion for Preliminary Injunction.

Therefore, it is

**ORDERED**, that the Motion to Dismiss (Doc. 13) is **GRANTED IN PART AND DENIED IN PART**, Counts I, III, and IV are **DISMISSED**.

The parties may file supplemental memoranda on the Motion for Preliminary Injunction (Doc. 6), addressing the Ordinance in its current form and how that impacts the requested injunctive relief. Plaintiffs shall have ten (10) days from this Order to file a memorandum not exceeding ten (10) pages. The Defendant shall then have ten (10) days to file a responsive memorandum not exceeding ten (10) pages.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 6, 2015.



_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party